UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CS WIND MALAYSIA SDN. BHD. and<br>CS WIND CORPORATION,<br><br>                Plaintiffs,<br><br>                v.<br><br>UNITED STATES,<br><br>                Defendant. | **Court No. 24-00150** |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs, CS Wind Malaysia Sdn. Bhd. ("CS Wind Malaysia") and CS Wind Corporation ("CS Wind Korea") (collectively, "CS Wind" or "Plaintiffs"), by and through their counsel, allege and state as follows:

## JURISDICTION

1. Plaintiffs bring this action pursuant to, and in accordance with, Section 516A(a)(2) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. § 1516a(a)(2)), contesting the final results issued by the U.S. Department of Commerce ("Commerce") in Utility Scale Wind Towers from Malaysia: Final Results of Antidumping Duty Administrative Review; 2021-2022, 89 Fed. Reg. 56,735 (Dep't Commerce July 10, 2024) ("Final Results"), and the accompanying "Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order: Utility Scale Wind Towers from Malaysia; 2021-2022" (Dep't Commerce July 2, 2024) ("Final Decision Memo"), as they apply specifically to Plaintiffs. This Court has jurisdiction over this matter under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

**STANDING**

2. Plaintiffs, CS Wind Malaysia and CS Wind Korea, are foreign producers and/or exporters of subject merchandise and/or were respondents in the administrative review that is contested here. Plaintiffs therefore are interested parties within the meaning of 19 U.S.C. § 1677(9)(A). Plaintiffs actively participated in the administrative review through submission of factual information and written argument and, thus, are parties to the proceeding as defined in 19 C.F.R. § 351.102(b)(36). As interested parties that actively participated in the underlying administrative proceeding, Plaintiffs have standing pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

**TIMELINESS**

3. The Final Results, which are being challenged herein, were published in the Federal Register on July 10, 2024. See Final Results, 89 Fed. Reg. at 56,735. On August 9, 2024, within 30 days after the publication of the subject Final Results, Plaintiffs filed a Summons to initiate this action. Accordingly, this action was commenced within the period specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(I). This Complaint is being filed within 30 days after the date on which the Summons was filed. Therefore, according to the provisions of 19 U.S.C. § 1516a(a)(2)(B)(iii), 28 U.S.C. § 2636(c), and Rule 3(a)(2) of the Rules of the U.S. Court of International Trade, this action is timely brought.

**STANDARD OF REVIEW**

4. This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1675(a) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## PROCEDURAL HISTORY

5.      On December 6, 2021, Commerce published in the Federal Register the final antidumping duty ("AD") order covering utility scale wind towers from Malaysia.  See Utility Scale Wind Towers from India and Malaysia:  Antidumping Duty Orders, 86 Fed. Reg. 69,014 (Dep't Commerce Dec. 6, 2021).

6.      On January 3, 2023, pursuant to Commerce's notice of opportunity to request an administrative review, CS Wind timely filed a timely request to conduct an administrative review covering the period of review ("POR"), i.e., October 13, 2021, through November 30, 2022.  See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review and Join Annual Inquiry Service List, 87 Fed. Reg. 73,752, 73,753 (Dep't Commerce Dec. 1, 2022); see also Letter from Trade Pacific PLLC to Sec'y Commerce, re: "Utility Scale Wind Towers from Malaysia – Request for Administrative Review" (Jan. 3, 2023).

7.      On February 2, 2023, Commerce initiated the first administrative review of utility scale wind towers from Malaysia.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 88 Fed. Reg. 7,060, 7,062 (Dep't Commerce Feb. 2, 2023).

8.      On March 2, 2023, Commerce issued the initial questionnaire to CS Wind as the sole mandatory respondent.  CS Wind submitted responses to Commerce's initial questionnaire, as well as several supplemental questionnaires, between April 2023 and December 2023.  As part of its questionnaire responses, CS Wind advised Commerce that CS Wind had shut down production in March 2022, which was four months into the POR, and thus had no production during most of the POR.  Through its questionnaire responses, CS Wind demonstrated that because of the abnormal production status, CS Wind's conversion costs of wind towers (i.e.,

labor cost plus manufacturing overhead) were aberrational relative to the previous segment of the proceeding because of the reduced production volumes and high processing costs as CS Wind wound down its operations. CS Wind reported a cost adjustment to mitigate the distortive effects of the abnormal production status on the reported costs of manufacturing ("COM").

9. On January 4, 2024, Commerce published the preliminary results of the first administrative review in which it calculated a preliminary AD rate of 25.92 percent *ad valorem* for Plaintiffs. See <u>Utility Scale Wind Towers from Malaysia: Preliminary Results of Antidumping Duty Administrative Review, 2021–2022</u>, 89 Fed. Reg. 461, 462 (Dep't Commerce Jan. 4, 2024) ("<u>Preliminary Results</u>"), and accompanying "Decision Memorandum for the Preliminary Results of the Antidumping Duty Administrative Review of Utility Scale Wind Towers from Malaysia; 2021-2022" (Dep't Commerce Dec. 28, 2023).

10. On February 15, 2024, Plaintiffs submitted a case brief for Commerce's consideration concerning two calculation issues arising in the <u>Preliminary Results</u>. First, CS Wind argued that Commerce should accept and apply the reported adjustment to CS Wind's conversion costs to eliminate the inaccuracies and distortions resulting from the fact that CS Wind shut down its facility and ceased production four months into the 13.5-month POR. CS Wind explained that the shutdown cost adjustment was necessary to ensure that the COM used in the final AD margin calculations reasonably reflected the production of the merchandise under consideration, as required under 19 U.S.C. § 1677b(f)(1)(A).

11. Second, CS Wind argued that Commerce should not calculate constructed value ("CV") profit and selling expenses for CS Wind using the fiscal year ("FY") 2022 financial statements of Mycron Steel Berhad and Alpine Pipe Manufacturing Sdn Bhd because substantial record evidence demonstrated that both companies were not producers of comparable

merchandise and, thus, both represented unsuitable sources to rely upon for the CV profit and selling expense ratio calculations. CS Wind argued that Commerce instead should have used the FY 2021 financial statements of CS Wind Malaysia itself, as those financial statements reported positive profits, or alternatively the FY 2022 financial data of surrogate producers of comparable merchandise (i.e., large structural pipes) located outside of Malaysia.

12. On March 4, 2024, the petitioner, Wind Tower Trade Coalition, submitted a rebuttal brief.

13. On May 6, 2024, Commerce conducted a public hearing with legal representatives of Plaintiffs and the petitioner in attendance.

14. On July 10, 2024, Commerce published the Final Results of the first administrative review of the AD order in which it calculated a weighted-average dumping margin of 18.02 percent *ad valorem* for Plaintiffs. See Final Results, 89 Fed. Reg. at 56,735. Commerce did not make any change to the calculation of the CV profit and selling expense ratio calculations. See Final Decision Memo at 7-11. Commerce also continued to disallow CS Wind's adjustment to conversion costs, which would have fully eliminated distortions associated with the cessation of production early in the POR. Id. at 4-6. Instead, Commerce only excluded post-shutdown costs incurred during the POR and revised CS Wind's general and administrative ("G&A") expense and financial expense ratios to exclude shutdown costs from the cost of goods sold ("COGS") denominators used in the ratio calculations.

15. On July 8, 2024, CS Wind alleged that Commerce committed a ministerial error in the Final Results concerning a currency conversion error in COGS denominator used in the calculation of the revised financial expense ratio. On August 13, 2024, Commerce published amended final results in which it corrected the alleged ministerial error and calculated a revised

Court No. 24-00150                                                                            Complaint

weighted-average dumping margin of 17.97 percent *ad valorem* for Plaintiffs.  See <u>Utility Scale Wind Towers from Malaysia: Amended Final Results of Antidumping Duty Administrative Review; 2021–2022</u>, 89 Fed. Reg. 65,848, 65,849 (Dep't Commerce Aug. 13, 2024).

### **ISSUES PRESENTED BY THE ACTION AND PLAINTIFFS' STATEMENT OF CLAIMS**

16. In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's <u>Final Results</u> in its AD administrative review are not supported by substantial evidence and are otherwise not in accordance with law.

### **COUNT ONE**

17. Paragraphs 1 through 16 are incorporated herein by reference.

18. Commerce's failure to apply the conversion cost adjustment to CS Wind's high reported COM that CS Wind presented in its questionnaire responses—which would have fully eliminated the inaccuracies and distortions arising from the fact that CS Wind's books and records recorded high conversion costs but CS Wind had significantly curtailed production volumes that occurred only in the first four months of the 13.5 month POR—was unreasonable, unsupported by substantial record evidence, and otherwise not in accordance with Commerce's legal obligation to ensure that the COM used in the AD calculations "reasonably reflect" the costs associated with producing the subject merchandise.

### **COUNT TWO**

19. Paragraphs 1 through 18 are incorporated herein by reference.

20. Commerce's determination to calculate CV profit and selling expense ratios based on the average of two surrogate Malaysian companies, Mycron Steel Berhad and Alpine Pipe Manufacturing—despite substantial record evidence demonstrating that both companies are not producers of comparable merchandise and, therefore, both represented unsuitable sources to rely

upon for calculating the CV profit and selling expense ratios—was unreasonable, unsupported by substantial record evidence, and otherwise not in accordance with law. By relying up surrogate sources with dissimilar business operations and sales channels to that of Plaintiffs, rather than using available record sources such as CS Wind Malaysia's own financial statements or the financial statements of non-Malaysian producers of comparable merchandise, Commerce unreasonably and unlawfully introduced distortions and inaccuracies into the weighted-average AD duty calculations for CS Wind.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

21.  For the reasons stated above, Plaintiffs respectfully request that the Court:

(a)  enter judgment in Plaintiffs' favor;

(b)  declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(c)  remand these matters to Commerce for redetermination consistent with the Court's opinion, including a recalculation of the margin for CS Wind; and

(d)  provide such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Jarrod M. Goldfeder
MacKensie R. Sugama
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC  20003
Tel:  (202) 223-3760
jgoldfeder@tradepacificlaw.com

*Counsel to Plaintiffs CS Wind Malaysia Sdn. Bhd. and CS Wind Corporation*

Dated:  September 6, 2024

# UNITED STATES COURT OF INTERNATIONAL TRADE

*CS Wind Malaysia Sdn. Bhd. and CS Wind Corporation v. United States*
**Court No. 24-00150**

### <u>CERTIFICATE OF SERVICE</u>

  Pursuant to Rule 3(f) of the Rules of the Court of International Trade, I, Jarrod M. Goldfeder, hereby certify that on this 6th day of September, 2024, copies of the foregoing Complaint were served by certified mail, return receipt requested, on the following parties:

**On behalf of The United States of America:**

Attorney-in-Charge
U.S. DEPARTMENT OF JUSTICE
International Trade Field Office
Commercial Litigation Branch - Civil Division
26 Federal Plaza – Room 346
New York, NY 10278

Isabelle Aubrun, Esq.
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

General Counsel
U.S. DEPARTMENT OF COMMERCE
14th Street & Constitution Avenue, NW
Room 5875
Washington, DC 20230

Chief Counsel
Office of the Chief Counsel for Trade Enforcement & Compliance
U.S. DEPARTMENT OF COMMERCE
14th Street and Constitution Ave., NW
Room 3622
Washington, DC 20230

**On other counsel that represented interested parties before the U.S. Department of Commerce in the contested determination:**

Laura El-Sabaawi, Esq.
WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036

            /s/ Jarrod M. Goldfeder
            Jarrod M. Goldfeder
            TRADE PACIFIC PLLC