NON-CONFIDENTAL VERSION

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CS WIND MALAYSIA SDN. BHD. and CS WIND CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> WIND TOWER TRADE COALITION, <br><br> Defendant-Intervenor. | Before: Hon. Gary S. Katzmann, Judge <br><br> Court No. 24-00150 <br><br> <u>NON-CONFIDENTIAL VERSION</u> <br><br> Business Proprietary Information Removed from Page: 2 |

<u>**DEFENDANT-INTERVENOR WIND TOWER TRADE COALITION'S POST ARGUMENT SUBMISSION**</u>

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Laura El-Sabaawi, Esq.
Derick G. Holt, Esq.
Kimberly A. Reynolds, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for the Wind Tower Trade Coalition*

Dated: July 29, 2025

## TABLE OF CONTENTS

Page

I.   CONVERSION COST ADJUSTMENT ................................................................................ 1

II.  CV PROFIT SOURCES ........................................................................................................ 5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agro Dutch Foods Ltd. v. United States*,
   24 CIT 510, 110 F.Supp.2d 950 (2000) ...................................................................................3

*Dongkuk S&C Co., v. United States*,
   134 F.4th 1320 (Fed. Circ. 2025) ............................................................................................4

*Nucor Corp. v. United States*,
   33 CIT 2017, 612 F.Supp.2d 1264 (2009) ..............................................................................3

*Tian Ziyang Food Co. v. United States*,
   37 CIT 947, 918 F.Supp.2d 1345,1354 (2013) .......................................................................2

**Statutes**

19 U.S.C. §1677b(f)(1)(C)(ii)(II) .....................................................................................................3

**Administrative Materials**

*Certain New Pneumatic Off-the-Road Tires from India*,
   89 Fed. Reg. 83,641 (Dep't Commerce Oct 17, 2024) ...........................................................3

*Chlorinated Isocyanurates from Spain*,
   70 Fed. Reg. 24,506 (Dep't Commerce May 10, 2005) .........................................................3

*Polyethylene Retail Carrier Bags from Thailand*,
   72 Fed. Reg. 1982 (Dep't Commerce Jan. 17, 2007) .............................................................4

*Pure Magnesium from Israel*,
   66 Fed. Reg. 49,349 (Dep't Commerce Sept. 27, 2001) ........................................................5

*Utility Scale Wind Towers from Malaysia*,
   89 Fed. Reg. 56,735 (Dep't Commerce July 10, 2024)) .......................................................1

*Utility Scale Wind Towers from Malaysia*,
   86 Fed. Reg. 56,894 (Dep't Commerce Oct. 13, 2021) ..........................................................3

*Utility Scale Wind Towers from Malaysia*,
   89 Fed. Reg. 461 (Dep't Commerce Jan. 4, 2024) .................................................................5

I.   **CONVERSION COST ADJUSTMENT**

Commerce's denial of CS Wind Corporation's ("CS Wind") "conversion cost adjustment" was lawful and supported by substantial evidence. In further support of Defendant and Defendant-Intervenor's written and oral arguments, Defendant-Intervenor addresses four points below.

First, despite Counsel for CS Wind's testimony at the oral argument, CS Wind confirmed that its "conversion cost adjustment" does not contain any costs from after CS Wind Malaysia was shutdown. Specifically, CS Wind conceded the conversion cost adjustment relates only to costs when it was producing wind towers. *See* Pls.' Resp. to Oral Arg. Qs. (July 18, 2025) at 4-5, ECF No. 43. However, CS Wind's explanation of why it needs a "conversion cost adjustment" takes into account what production should have been over the entire 13.5 month period of review ("POR"), when it unequivocally already accounts for the last eight months of the POR where it had no production under FOH_SD. *Id.* CS Wind is essentially inflating the denominator without any corresponding costs because those costs were already accounted for in FOH_SD. Through these adjustments, CS Wind is attempting to double count months of the POR where there was no production. Commerce correctly only removed actual shutdown costs recorded in FOH_SD, as reflected in CS Wind's books and records, and verified by its auditors. Issues and Decisions Memorandum accompanying *Utility Scale Wind Towers from Malaysia*, 89 Fed. Reg. 56,735 (Dep't Commerce July 10, 2024) (final results of antidumping duty admin rev.; 2021-2022) at 5-6, ECF No. 23-4, P.R. 170 ("IDM").

Second, the crux of CS Wind's argument is that its per-unit production costs were higher during the POR because it produced less towers during the POR, which spreads cost from the entire POR over less units. Notwithstanding the legal shortcomings of CS Wind's adjustment, their

1

factual justification for making the adjustment likewise fails. As counsel for Defendant-Intervenor testified at the hearing, the record demonstrates that the average monthly production volume for the five and a half months when CS Wind Malaysia was producing towers was *greater* than the average monthly production during the investigation. Specifically, during the period of investigation ("POI") CS Wind produced [    ] towers, amounting to a monthly average of [   ] towers, when dividing the total by 12 months. ECF No. 43 at 1-2. In comparison, CS Wind produced [   ] towers during the 5.5 months of the POR that CS Wind was producing towers, amounting to a monthly average of [   ] towers. *Id.* This is critical because CS Wind's justification for its "conversion cost adjustment" is that production volumes were "aberrationally low" during the POR. *Id.* This is factually incorrect.

This demonstrates that the production costs recorded for the first five and a half months of the POR when CS Wind was producing towers were its actual costs and not a result of low production volume, as Commerce correctly found in its Final Results. IDM at 4-5. Commerce thus correctly disallowed CS Wind's "conversion cost adjustment" for actual costs. *Id.* As detailed in Defendant-Intervenor's submissions and during the oral argument, Commerce's path is reasonably discernable and supported by substantial evidence. *Tian Ziyang Food Co. v. United States*, 37 CIT 947, 918 F.Supp.2d 1345,1354 (2013).

Additionally, Plaintiffs cite no cases where a startup cost adjustment is based on costs outside of the POI or POR. Indeed, the purpose of making any adjustment is to reflect the cost of producing the product in the relevant period. Statement of Administrative Action, H.R. Rep. No. 103-316 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4172. Thus, Commerce adjusts startup costs based on costs *within* the same period. Issues and Decisions Memorandum accompanying

*Chlorinated Isocyanurates from Spain*, 70 Fed. Reg. 24,506 (Dep't Commerce May 10, 2005) (notice of final deter. of sales at less than fair value) at cmt. 9 (denying the adjustment but reflecting that costs would have been adjusted by costs <u>within</u> the POR). There is no legal support to adjust POR costs by costs from a different period, and in this case, costs that occurred 27 months prior to the POR. *Utility Scale Wind Towers from Malaysia*, 86 Fed. Reg. 56,894 (Dep't Commerce Oct. 13, 2021) (final affirmative determination of sales at less than fair value).

Moreover, startup cost adjustments are rarely applied given the strict statutory technical limitation requirement, *i.e.*, Commerce must understand what technical factors limited production. 19 U.S.C. §1677b(f)(1)(C)(ii)(II); *Nucor Corp. v. United States*, 33 CIT 2017, 612 F.Supp.2d 1264 (2009) (upholding Commerce's denial of the startup cost adjustment because respondent did not demonstrate technical factors); *Agro Dutch Foods Ltd. v. United States*, 24 CIT 510, 110 F.Supp.2d 950 (2000). CS Wind cannot claim that its production was "aberrationally low" without any factual support to trigger an adjustment from Commerce. Specifically, a respondent must demonstrate how production-related issues restricted the number of units produced or demonstrate how specific technical factors are unique to the startup phase. Issues and Decisions Memorandum accompanying *Certain New Pneumatic Of-the-Road Tires from India*, 89 Fed. Reg. 83,641 (Dep't Commerce Oct 17, 2024) (final results of antidumping duty admin. rev.; 2022-2023) at cmt. 3 Record evidence demonstrates CS Wind produced more units on average per month in the alleged "winding down" period than during the POI when it was at full commercial production. Notwithstanding the lack of statutory support for utilizing the startup cost adjustment provision to adjust for allegedly low volumes in the POR, CS Wind failed to place any of the information on record that suggests technical factors limited its production volume as required by this provision.

Third, during the oral argument, counsel for CS Wind asserted that Defendant-Interenor's claim that Commerce can only allocate actual costs incurred during the POR was not true based on the major input rule and particular market situation adjustments. This is incorrect. In *Dongkuk*, Commerce only allocated per-unit costs that were incurred during the POI. *Dongkuk S&C Co., v. United States*, 134 F.4th 1320, 1329 (Fed. Circ. 2025). Similarly, other adjustments, such as those made under the major input rule, and a particular market situation, are both made from costs within the relevant period. That is, Defendant-Intervenor is not aware of any legal justification that would allow a respondent to equalize costs incurred in one review period to another, which is exactly CS Wind has asked Commerce to do in the underlying review.

Fourth, "there is no precedent for excluding costs incurred as a consequence of the antidumping proceeding." Issues and Decisions Memorandum accompanying *Polyethylene Retail Carrier Bags from Thailand*, 72 Fed. Reg. 1982 (Dep't Commerce Jan. 17, 2007) (final results of admin. dumping duty admin. rev.) at cmt. 3B ("*Retail Carrier Bags*"). In *Retail Carrier Bags*, respondent claimed that extraordinarily high provisional dumping measures forced it to shut down its plant and move its production line, which incurred high shutdown costs. *Id.* The respondent argued that such costs qualified for a startup cost adjustment because they were extraordinary. Commerce rejected this adjustment. *Id.* Similarly, CS Wind's management decided to shut down its Malaysia facility after Commerce imposed antidumping and countervailing duty orders on its towers from Malaysia. Any purported costs that were incurred as a result of trade proceedings do not warrant an adjustment. Def.-Intervenor Resp. Br. (June 6, 2025) at 9, ECF No. 36. Attempting to equalize costs to a period where CS Wind was found to be dumping without the discipline of the order would be inaccurate as it would not incorporate the costs to comply with AD orders.

Ct. No. 24-00150                                                                                                                  NON-CONFIDENTAL VERSION

## II. CV PROFIT SOURCES

Commerce's reliance on the financial statements of Alpine Pipe Company and Mycron was lawful and supported by substantial evidence. In further support of Defendant and Defendant-Intervenor's written and oral arguments, Defendant-Intervenor further addresses one point below.

When valuing CV profit, Commerce's practice is to use financial statements that are contemporaneous with the POR. Issues and Decision Memorandum accompanying *Pure Magnesium from Israel*, 66 Fed. Reg. 49,349, (Dep't Commerce Sept. 27, 2001) (notice of final deter. of sales at less than fair value). CS Wind's suggestion at the oral argument that Vallourec's 2021 financial statement, which only covers two months of the POR is more appropriate than more contemporaneous statements because half of CS Wind's production occurred in 2021, is thus incorrect. *Id.* at cmt. 4 (selecting a financial statement that related to nine months of the POR over a statement that related to three months of the POR). Regardless, Commerce correctly accepted Defendant-Intervenor's submission of Vallourec's 2022 financial statements, which were more contemporaneous with the POR, and found that they were unprofitable. *Utility Scale Wind Towers from Malaysia*, 89 Fed. Reg. 461 (Dep't Commerce Jan. 4, 2024) (prelim. results of antidumping duty admin. rev., 2021-2022) at 14, P.R. 147. Moreover, under CS Wind's logic, the 2021 financial statement of Arabian Pipe Company ("APC") submitted by Defendant-Intervenor would have been an appropriate source. However, APC was unprofitable in 2021. Def.-Intervenor Resp. Br. at 22. As Plaintiffs conceded at the oral argument, Commerce's practice is to disregard unprofitable financial statements. Thus, APC would likewise be an inappropriate choice under CS Wind's own arguments.

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor Wind Tower Trade Coalition's Post Argument Submission, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2025), is 1,500 words.

/s/ Derick G. Holt
(Signature of Attorney)

Derick G. Holt, Esq.
(Name of Attorney)

Wind Tower Trade Coalition
(Representative Of)

July 29, 2025
(Date)